IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ROBERT A. ST. CLAIR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-19-981-PRW |
| | ) |
| EPHRIAM EDWARDS, and | ) |
| HOPELAND TRUCKING, LLC, | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S MOTION TO EXCLUDE UNTIMELY EXPERT REPORTS**

The plaintiff, Robert St. Clair, moves the Court to exclude the untimely supplemental expert reports of Mike Rangel and Harry L. Smith. The defendants produced these reports *mere days* before trial. This is a blatant violation of Rule 26 and the scheduling order. The exclusion of these reports is required in order to prevent prejudice to the plaintiff.

**I.**

**BACKGROUND**

Rule 26(a)(2)(d) states that expert reports must be product at least 90 days before trial, although the Court can order a different deadline.[1] Here, the Court did so. About six months after this case was filed, the Court entered a scheduling order.[2] And the scheduling order required the defendants to produce expert reports by July 11, 2020.[3] That timing

---

[1] *See generally* Fed. R. Civ. P. 26(a)(2)(d).
[2] Exhibit A, scheduling order.
[3] *Id*. at no. 3(b).

1

directive was meant to enforce Rule 26(a)(2)(B), which mandates that a retained expert *must* produce a report containing all of his opinions in order to testify to the opinions at trial.[4] Apart from the scheduling order's specific deadline for expert reports, the order also set an overall discovery deadline of August 1, 2020.[5]

After both the expert report and overall discovery deadlines expired, the defendants moved to re-open discovery for the limited purpose of obtaining information on a tire mark notation that was on the vehicular crash report.[6] The Court granted that targeted motion—but it imposed a February 2, 2021 deadline for discovery to be completed on the topic.[7] That deadline came and went. Importantly, the defendants did *not* produce the reports at issue in this motion by February 2, 2021. Nor did they produce them soon thereafter.

Indeed, the defendants waited **more than five months** after the February 2, 2021 deadline to produce the reports at issue now. Specifically, on July 12, 2021—just one week before trial—the defendants produced a supplemental report by their reconstruction expert Mike Rangel.[8] Then, on July 15, 2021—even closer to trial—the defendants produced a supplemental report from their biomechanical expert, Harry L. Smith.[9]

---

[4] Fed. R. Civ. P. 26(a)(2)(B) ("Witnesses Who Must Provide A Written Report. Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain: (i) a complete statement of all opinions the witness will express and the basis and reasons for them . . . ")

[5] Exhibit A, scheduling order, at no. 6.

[6] Rec. Doc. 75.

[7] Exhibit B, order granting defendants' motion to re-open discovery.

[8] *See* Ex. C, Defs.' Supp. Prod. Email; *see also,* Ex. D, Rangel's July 11, 2021, Supplemental Report.

[9] Ex. E, Harry J. Smith's July 15, 2021, Supplemental Report.

2

The defendants' reports are grossly untimely. Further, the production of these reports at this very late hour is even more jarring given that that the defendants themselves have already moved in limine to exclude "Testimony or evidence **of *updated or altered opinions*** from Plaintiff's Experts."[10] In fact, Plaintiff filed a nearly identical limine to exclude untimely disclosed opinions.[11] More shocking, the defendants **agreed** with Plaintiff's motion in limine 15 establishing that no retained expert should be able to supplement or amend their opinions from September 2020 to trial.[12] Now, however, the defendants have taken the position they are essentially "withdrawing" their written agreement, made part of this case record, in an attempt to ambush and prejudice Plaintiff on the eve of trial.

The defendants' untimely reports are a clear violation of Rule 26 and the Court's scheduling orders. And they are an obvious attempt to ambush the plaintiff on the eve of trial. The plaintiff now moves the Court to exclude these reports under Rules 26 and 37.

## II.

**THE COURT SHOULD EXCLUDE THE DEFENDANTS' UNTIMELY EXPERT REPORTS**

Rule 26(e)(1) requires that a party supplement or correct all required disclosures under Rule 26(a)—along with his discovery responses—in a "timely manner."[13] Because

---

[10] Ex. F, defendants' Motions *in Limine* (Dkt. # 56) at pg. 8, motion in limine no. 62 (emphasis added).

[11] *See* Plaintiff's Motions *in Limine* (Dkt. #53) at pg. 5, motion in limine no. 15 (emphasis added).

[12] *See* Defendants Responses to Plaintiff's Motions in Limine (Dkt. #61) at pg. 6, response to motion in limine 15 ("The Defendants agree with the Plaintiff's Motion in Limine No. 15 as far as it is reciprocal.")

[13] Fed. R. Civ. P. 26(e)(1) ("A party who has made a disclosure under Rule 26(a)--or who has responded to an interrogatory, request for production, or request for admission--must supplement

the disclosure of expert reports is mandated by Rule 26(a)(2), the plain text of Rule 26(e)(1) commands that the party must supplement his expert reports in a timely manner.

If a party fails to do so, Rule 37 authorizes various forms of relief. Notably: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless."[14] This is described in the advisory committee notes as an exclusionary rule which is "self-executing"[15] and it operates as an "automatic sanction"[16] unless and until the proponent shows that the failure to disclose was justified or harmless. The Tenth Circuit agrees with, and enforces, all of these points:

> A party who seeks to introduce an expert's opinion into evidence must provide a written disclosure report to the other side that contains a *complete* statement of all opinions the witness will express and the basis and reasons for them. The rule also imposes a continuing duty to supplement the expert report with any additions or changes. *Id.* at 26(a)(2)(E), 26(e)(1). These requirements are mandatory and self-executing. This means that when "a party fails to provide

---

or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . .")

[14]  Fed. R. Civ. P. 37(c)(1).

[15]  *Id*. at Advisory Committee Notes, 1993 Amendment, Subdivision (c) ("The revision provides a ***self-executing*** sanction for failure to make a disclosure required by Rule 26(a), without need for a motion under subdivision (a)(2)(A) . . .") (emphasis added).

[16]  *Id*. ("Paragraph (1) prevents a party from using as evidence any witnesses or information that, without substantial justification, has not been disclosed as required by Rules 26(a) and 26(e)(1). ***This automatic sanction*** provides a strong inducement for disclosure of material that the disclosing party would expect to use as evidence, whether at a trial, at a hearing, or on a motion, such as one under Rule 56. As disclosure of evidence offered solely for impeachment purposes is not required under those rules, this preclusion sanction likewise does not apply to that evidence.") (emphasis added).

>information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness . . . at a trial, unless the failure was substantially justified or is harmless.[17]

The Tenth Circuit has set forth a four-factor analysis to guide district courts in determining whether a failure to supplement was substantially justified or harmless.[18] These factors are: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness."[19]

Here, the defendants' egregiously late production of their supplemental expert reports—within mere days of trial—weighs heavily on all four factors of the analysis in favor of exclusion. As noted, one week before this trial is set to begin, the defendants' produced a supplemental report by their reconstruction expert Mike Rangel.[20] And days later they produced a supplemental report from their biomechanical expert, Harry L. Smith.[21] These disclosures—all made on the eve of trial—are completely unjustified. Each factor of the analysis weighs in favor of excluding reports.

---

[17] *Dahlberg v. MCT Transp., LLC*, 571 Fed. Appx. 641, 645 (10th Cir. 2014) (cleaned up) (internal quotations and citations omitted).

[18] *Woodworker's Supply Inc. v. Principal Mutual Life Insurance Co.*, 170 F.3d 985, 993 (10th Cir. 1999).

[19] *Id*.

[20] See Ex. C, Defs.' Supp. Prod. Email; *see also,* Ex. D, Rangel's July 11, 2021, Supplemental Report.

[21] Ex. E, Harry J. Smith's July 15, 2021, Supplemental Report.

## II-A

### FACTORS ONE AND TWO STRONGLY WEIGH IN FAVOR OF EXCLUSION BECAUSE THE DEFENDANTS' EGREGIOUSLY LATE DISCLOSURE CREATES INCURABLE PREJUDICE

The first factor of the analysis asks whether the plaintiff has been prejudiced by the defendants' disclosure of supplemental expert reports on the virtual eve of trial. The answer is plainly yes. And the second factor asks whether that prejudice can be cured. The answer is plainly no. Courts recognize that the production of an untimely expert report with new opinions on the eve of trial creates incurable prejudice to the opposing party. Consider the following:

- *SFF-TIR v. Stephenson*, 2020 WL 2922190 at * 14 (N.D. Okla. 2020) ("The Court has concluded that an untimely disclosure prejudices an opposing party, that the prejudice is incurable, and that the untimely disclosure disrupts trial when the disclosure occurs close to trial, the party did not previously know of the information contained in the disclosure, and/or the opposing party does not have an opportunity to engage in further discovery or depositions.");

- *Guidance Endodontics, LLC v. Dentsply Intern., Inc.*, 2009 WL 3672502 at *5 (D. N.M. 2009) ("The trial of a case is a substantial undertaking that consumes most or all of an attorney's time. Delivering an expert report to opposing counsel on the first day of trial, therefore, is not helpful. There is no time to prepare a rebuttal expert or investigate the principles underlying the expert's opinions."); and

- *Derrick v. Standard Nutrition Co.*, 2019 WL 2717150 at *6 (D. N.M. 2019) ("Trial is set for July 29, 2019, one month from now. The Court finds that admitting the untimely evidence or allowing Dr. Box to testify as an expert to the extent Plaintiffs request would significantly disrupt the trial and prejudice Defendant.").

These points ring true here. The defendants' late production of Mike Rangel and Harry L. Smith's supplemental expert reports aim to ambush and prejudice the plaintiff on the eve of trial. These reports raise new matters—even matters raising *Daubert* considerations that the plaintiff cannot properly challenge or cross-examine at this point.

Indeed, the plaintiff and the plaintiff's experts will be hard-pressed to even respond to these late disclosures—disclosures which the defendants could have easily made months ago. This applies to both reports.

First, regarding Mike Rangel's supplemental report, the document includes additional findings, which greatly prejudices the plaintiff. Rangel's supplemental report was "prepared to discuss some additional materials that have been received since [his] initial report, dated July 20, 2020," and the report lists the additional materials.[22] Notably, however, the latest documents Rangel relied on in his report are from January 29, 2021.[23] The defendants and Rangel have had access to the newest "additional materials" for almost six months and access to all other referenced materials for close to a year, at a minimum.[24]

Critically, Rangel's reconstruction and tire-skid analysis has now been completely altered on the verge of trial based on a single statement from Newcastle Police Department Lieutenant, Toby Garver. The collision police report *that has been in the possession of the Defendants for almost two years* included 234 feet of tire marks. However, Rangel completely altered his analysis because Garver "had no independent memory of measuring any tire marks or skid marks. . ." Below is a screenshot of a paragraph of Rangel's report, which purportedly gives the basis for his supplemental opinions:

---

[22]    Ex. D, Mike Rangel Supp. Report, at 1, 12.
[23]    *Id*.
[24]    *Id.*

> This supplemental report has been prepared to discuss some additional materials that have been received since my initial report, dated July 20, 2020. These additional materials are listed in the reference section of this report. In my initial report there was discussion of an analysis that was performed to compute pre-braking speed of the Dodge, based on a measurement of "234 feet of tire marks" that appeared on a copy of the police report that was received through discovery. In his deposition, the investigating officer of the Newcastle Police Department, Lieutenant Toby Garver, testified that he had no independent memory of measuring any tire marks or skid marks by any of these vehicles on the evening of this incident. Therefore, this supplemental report corrects the calculations and opinions regarding pre-braking speed of the Dodge based on any skid marks. [25]

It should not surprise Rangel, the defendants, or any reasonable person that Garver did not have an independent recollection of measuring the skid marks. The accident at issue here occurred on October 13, 2017. Garver's deposition was conducted on January 29, 2021—1,202 days after the accident occurred. One would expect that Garver would not have an independent recollection of measuring the skid marks on an accident that occurred over three and a half years prior. Indeed, Garver testified that he did not have an independent recollection of anything except for a conversation he had with Defendant Edwards following the collision where Edwards stated he was looking at his GPS prior to the collision:

> Q   Do you have an independent memory of what the drivers had stated to you that evening about how the accident occurred?
>
> A   *The only thing I recall is Mr. Edwards, the semi driver of Unit 1, stated that he had pulled over to look at his GPS. And as he started to pull back out, he -- that's when the accident happened.*
>
> Q   Okay. Do you have an independent memory of speaking to Mr. St. Clair, the gentleman that was in the pickup truck?
>
> A   No, sir.
>
> Q   And do you have an independent memory of speaking to Mr. Ezekiel Morgan, the gentleman that was Vehicle No. 3?

---

[25]   *See* Ex. D at 1.

A    No, sir.[26]

Because Garver did not have an independent recollection of measuring the skid marks, it does not mean the skid marks were not present at the time of the collision as indicated by the markings on the police report. Yet, that is exactly what Rangel attempts to say now. The statements made by Garver hardly give Rangel the factual foundation to definitively state that the 234 feet of skid marks did not occur.

Moreover, it is anticipated that Defendants will argue Mr. Rangel was under the impression the handwritten notation related to the 234 feet tire marks was incorrectly assumed to be part of an official report made by the investigating officer. However, such argument would be disingenuous and false. Defendants, and their expert, in fact have a copy of the subject crash report, that does not contain these markings. This was produced by the Defendants over 18 months ago. This report was in the possession of Hopeland Trucking, LLC as part of the file related to Mr. Edwards.[27] As such, any argument that his original report was based on misinformation, it was apparent on a review of the file that the 234 feet tire marking notation was not part of the original report. This is simply an attempt by the Defendants to have their retained expert substantively change his opinions on the eve of trial, and frankly attempting manufacture a reason for the late ambush.

Accordingly, Rangel's supplemental report is entirely based on speculative assumptions without a proper factual foundation. These matters would have fodder for a

---

[26]    *See* Ex. H, Toby Michael Garver Deposition at 30:15–31:4 (emphasis added).

[27]    Ex. J, police report produced by defendants.

deposition and a potential *Daubert* motion, but discovery is now closed. Regardless, this theory has no place being presented by Rangel for the first time on the eve of trial.

And second, as for the supplemental report of Harry L. Smith on July 15, 2021, it equally presents new, additional (and very significant) findings that are prejudicial to the plaintiff.[28] Most alarmingly, Dr. Smith now offers opinions for the first time rebutting the plaintiff's treating physicians and retained experts on the plaintiff's traumatic brain injury and future care needs.

The majority of Dr. Smith's supplemental report is spent rebutting the plaintiff's medical providers. Specifically, for the first time, Dr. Smith presents new arguments and opinions regarding the plaintiff's Diffusion Tensor Imaging, Dr. Haider's Future Medical Report, and the plaintiff's Traumatic Brain Injury.[29] This discussion and Dr. Smith's opinions related to these issues were completely absent from Dr. Smith's original report.[30] The notion that Dr. Smith would purport to testify on a medical subject as complex as the plaintiff's **brain injury**—mere days before trial and without the lengthy discovery process inherent in testing his opinions by deposition—is completely beyond the pale. Indeed, after the plaintiff's counsel received the underlying diffuse tensor imaging MRI report and produced it to the defendants on March 10, 2021. But Dr. Smith still waited a full four months—on the eve of trial—to render opinions regarding it. In so doing, he improperly exempted himself from discovery on these opinions. Moreover, Dr. Smith is likely *not*

---

[28]   *See* Ex. E.
[29]   *See* Ex. E at 2–8.
[30]   *See* Ex. I, Dr. Smith's July 21, 2020 Report.

qualified to opine on the plaintiff's brain injury and the subject of diffuse tensor imaging. In fact, there is nothing in Dr. Smith's CV to suggest he is qualified to opine on brain injuries. Dr. Smith is a radiologist, not a neurologist. There is also nothing to suggest that he has ever treated or diagnosed a brain injury. Not surprisingly, there is also nothing to suggest that he is familiar with DTI and TBI, as most of his new opinions come from studies and not practice. This point is bolstered by the fact that Dr. Smith does not even attempt to explain why the results of the DTI should be rejected, but nonetheless making a conclusory opinion of the same.[31] Dr. Smith also attempts to discredit Dr. Filler, the interpreter of the DTI study, by suggesting that he is not qualified because he is not a fellowship trained neuroradiologist (which is unsupported as evidenced by Dr. Filler's CV showing he did a one year fellowship in neuroimaging and has extensive experience in neuroradiology), yet offering no credentials of his own to support his conclusory opinions. Of course, had Dr. Smith timely produced this report, the plaintiff would have moved for a *Daubert* hearing far sooner. But the late production threatens to punt this issue to the forefront of the voir dire phase of even *qualifying* Dr. Smith to testify as an expert at trial. The Court's gatekeeping function should not be so casually relegated to trial by the defendants' tactics.

Ultimately, both supplemental reports are highly prejudicial to the plaintiff. And this prejudice cannot be cured because the reports were produced literally days away from the trial. The plaintiff cannot adequately explore these points in discovery, which knee-caps both he and his experts in responding to the reports. Moreover, due to timing and the

---

[31] *See* Ex. E at 13.

inability to pursue discovery, the plaintiff cannot build a potential *Daubert* challenge to these theories. None of this is curable, because trial is impending. These factors—prejudice and its incurability—strongly counsel for the Court to exclude these reports from trial.

## II-B

### FACTOR THREE WEIGHS IN FAVOR OF EXCLUSION BECAUSE THIS NEW TESTIMONY WOULD DISRUPT TRIAL

The third factor asks whether the testimony at issue would disrupt the trial. Here, again, the production of untimely expert reports on the very eve of trial is recognized as presenting testimony that is disruptive to the trial itself. The reason is simple: Permitting such testimony would require re-depositions and responsive expert reports by the opposing party—all with an imminent trial date in place.[32]

"The same is true here."[33] Permitting Rangel and Smith's supplemental reports would dramatically disrupt the trial. The plaintiff would be required to discover these newly disclosed opinions through cross examine in front of the jury to depose those experts prior and, additionally, produce responsive testimony by his own expert witnesses. These are matters of intense *discovery* that simply cannot be conducted while the plaintiff's counsel is busy *trying* this case in court. Nor is there a good ground to disrupt the current

---

[32] *Derrick v. Standard Nutrition Co.*, 2019 WL 2717150 at *6 (D. N.M. 2019) ("Trial is set for July 29, 2019, one month from now. The Court finds that admitting the untimely evidence or allowing Dr. Box to testify as an expert to the extent Plaintiffs request would significantly disrupt the trial and prejudice Defendant. In *Quapaw Tribe of Oklahoma v. Blue Tee Corp.*, No. 03-cv-0846-CVE-PJC, 2010 WL 3909204, at *5 (N.D. Okla. Sept. 29, 2010), the court found that where trial was two months away, the third *Woodworker's* factor favored exclusion of untimely supplemental expert reports, because admission of the untimely reports would require the defendants to re-depose their own expert "and obtain their own updated expert reports...." The same is true here.").

[33] *Id*.

trial setting. The plaintiff and his counsel have spent significant time, energy, and resources preparing for the upcoming trial. Plaintiff has waited long enough for his day in court on an accident that occurred on October 13, 2017—nearly 1371 days ago. Plaintiff is ready to proceed to trial and has spent significant time and resources to prepare for trial. Therefore, as trial is only days away, this factor strongly favors exclusion of the Defendants' reports.

## II-C

### FACTOR FOUR WEIGHS IN FAVOR OF EXCLUSION BECAUSE THE DEFENDANTS HAVE CLEARLY ACTED WILLFULLY OR IN BAD FAITH

The fourth factor asks whether the defendants acted willfully or in bad faith. In this context, "[w]illful failure is 'any intentional failure as distinguished from involuntary noncompliance.'"[34] Here, it is obvious that the defendants have acted willfully or in bad faith. The reports at issue are not based upon information that was only available within one week of the trial—which is when they were produced. This is true on both reports. The fact that these reports were produced more than five months after the discovery cut-off deadline—and within a week of trial—is prima face evidence of willful and/or bad faith conduct by the defendants. Exclusion is warranted.

## III.

### CONCLUSION

The defendants produced Mike Rangel's and Dr. Smith's supplemental report well after the discovery deadline and mere days before trial. This violates the Scheduling Order

---

[34] *United Automobile Ins. Co. v. Stucki & Rencher, LLC*, 2021 WL 2170018 at *3 (D. Utah 2021) (quoting *Gocolay v. New Mexico Fed. Sav. & Loan Ass'n*, 968 F. 2d 1017, 1021 (10th Cir. 1992)).

and Rule 26. And so these reports should be excluded under Rule 37.  Allowing these materials in at trial would severely prejudice and ambush the plaintiff at trial. Exclusion should be automatic, but it is also appropriate under the Tenth Circuit's four-factor analysis. Consequently, the Court should grant Plaintiff's motion and exclude these reports entirely.

          Respectfully submitted,

          /s/ *Adam Lewis*_____
          J. Kyle Findley (*Pro Hac Vice*)
          Adam D. Lewis *(Pro Hac Vice)*
          ARNOLD ITKIN LLP
          6009 Memorial Drive
          Houston, TX  77007
          Tel: 713.222.3800
          Fax: 713.222.3850
          kfindley@arnolditkin.com
          alewis@arnolditkin.com
          kbateam@arnolditkin.com
          e-service@arnolditkin.com

          AND

          Larry E. Finn, OBA 31551
          PARRISH DEVAUGHN, PLLC
          7 S. Mickey Mantle Drive, 2nd Floor
          Oklahoma City, OK 73104
          405-999-9000
          405-232-0058 (f)
          larry@parrishdevaughn.com

          ***ATTORNEY FOR PLAINTIFF***

## CERTIFICATE OF SERVICE

  I hereby certify that on the 17th day of July, 2021, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing. Based on the records currently on file, the Clerk of the Court will transmit a Notice of Electronic Filing to the following ECF registrants:

DAN S. FOLLUO, OBA NO. 11303
dfolluo@rhodesokla.com
REBECCA L. NEWMAN, OBA NO. 30898
rlnewman@rhodesokla.com
RHODES, HIERONYMUS, JONES, TUCKER & GABLE
P.O. Box 21100
Tulsa, Oklahoma 74121-1100
***Attorneys for Defendants Hopeland Trucking, LLC and Ephriam Edwards***

_____
**Adam Lewis**